NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|  | : | **Criminal No. 18-415 (SRC)** |
| v. | : | |
|  | : | |
| BRAULIO BATISTA | : | **OPINION & ORDER** |
|  | : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Defendant Braulio Batista ("Defendant" or "Batista") for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The United States of America (the "Government") has opposed the motion. In reviewing this motion, the Court has considered the submissions on the docket, as well as the unredacted documents shielded from public access in light of the sensitive medical information they contain. For the following reasons, it will deny the motion.

**I.    BACKGROUND**

On July 18, 2018, Batista pleaded guilty to a charge of possessing a controlled dangerous substance (cocaine) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). This charge stemmed from Batista's role in a drug trafficking operation. In particular, on or about March 27, 2018, Batista visited the United States Post Office in Passaic, New Jersey and presented fraudulent identification documents to claim a parcel that had been mailed from Puerto Rico to one "Jose Pontier" at an address in New Jersey ( the "Parcel"). The Parcel was the

subject of a criminal investigation, and in the course of a March 27, 2018 search conducted pursuant to a warrant, had been found to contain approximately one kilogram of cocaine. Batista accepted the Parcel at the Post Office and was promptly arrested on the scene by several law enforcement officers who had been surveilling the transaction.

On November 29, 2018, this Court sentenced Defendant to a term of 60 months' imprisonment. Because he has been incarcerated since the date of his offense, Batista has served just over 28 months of his sentence, as of the date of this Opinion. He is currently housed in the Federal Correctional Institution, Schuylkill ("FCI Schuylkill"), a medium-security prison located in Minersville, Pennsylvania.

Defendant now moves for the Court to modify his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). In the alternative, he requests that the Court order that he may serve the remainder of his sentence under home confinement pursuant to 28 U.S.C. § 3624(c)(2).

## II.   LEGAL STANDARD

A district court may modify a sentence of imprisonment only in "limited circumstances." See Dillon v. United States, 560 U.S. 817, 825 (2010). One such circumstance is a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the Bureau of Prisons ("BOP") or by the defendant himself after the defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). Exhaustion under the statute requires one of the following: (1) the defendant inmate must fully pursue administrative appeal of the BOP's decision not to file a motion on the

defendant's behalf or (2) wait until "the lapse of 30 days from the receipt" by the warden of the defendant's facility of the defendant' request that a motion be filed. 18 U.S.C. § 3582(c)(1)(A). The Third Circuit has clearly held that the First Step Act authorizes a court to consider a motion brought directly by the defendant only after the statutory exhaustion requirement is satisfied. Raia, 954 F.3d at 597. Under the statute, a court may reduce the defendant's sentence if the Court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate that reducing the defendant's sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The Court notes that the statute itself does not define the key terms "extraordinary and compelling," apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release. See, e.g., United States v. Rodriguez, 2020 WL 1627331, at *5-6 (E.D. Pa. Apr. 1. 2020) (analyzing the "flexible catchall provision" set forth in the First Step Act and finding that it provides courts with leeway to consider circumstances outside of the guidelines published by the Sentencing Commission and the BOP). The Sentencing Commission has, however, issued a policy statement on the reduction of a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). While some courts have observed that the policy statement is not dispositive of an analysis under the statute, it remains that the Sentencing Commission's statement provides "helpful guidance" on the circumstances which rise to reasons warranting relief. United States v. Lisi, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (observing that the policy statement, though issued prior to the First Step Act, remains

relevant to a court's analysis); see also Rodriguez, 2020 WL 1627331, at *6 (holding that the policy statement "remains informative" in evaluating a motion under the First Step Act and citing various cases holding the same). [1]

The relevant policy statement, set forth in the Sentencing Guidelines § 1B1.13, includes an application note concerning medical conditions that may qualify as "extraordinary and compelling reasons." The note recognizes that compassionate release is appropriate when the inmate suffers from a terminal illness, such as "metastatic solid-tumor cancer," as well as in situations in which the inmate is "suffering from a serious physical or medication condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(a)(i) and (ii).

### III. DISCUSSION

As a threshold matter, the Court finds that Defendant has met the statutory exhaustion requirement of the First Step Act. Batista states that he applied to the BOP for administrative relief on or about April 8, 2020 and indicates that his request was denied. The Government notes that, regardless of the exact date on which Batista applied to the BOP for relief and the disposition of that motion, the 30-day period for the BOP to take action on his request has passed. It concedes that, in light of the expiration of the waiting period before a defendant may file his or her own motion directly with a court, Batista has met the exhaustion requirement of

---

[1] The Court also consults the Sentencing Commission's applicable policy statement in light of the plain language of 18 U.S.C. § 3582(c)(1)(A)(i), which directs courts to determine whether a modification of the sentence is consistent with the policy statements.

the First Step Act. The Court is also satisfied that this prerequisite to the motion has been met. Batista's motion for compassionate release under Section 3582(c) is, therefore, properly before this Court.

The Court, then, turns to substance of the application. Batista moves for a reduction in sentence due to his health and the circumstances posed by the Covid-19 pandemic in a prison environment, where achieving social distancing is challenging and, at times, impossible. Batista asserts that he has a number of medical conditions which put him at higher risk of severe illness or death in the event he is infected with coronavirus. In particular, he states that he suffers from multiple sclerosis as well as obesity, hypertension, a pre-diabetic condition, and asthma. Batista also argues that he faces a heightened chance of contracting the virus in his detention facility, describing the situation as FCI Schuylkill as "dangerous," given that an "unknown number of staff and inmates have tested positive for COVID-19." (ECF 33 at 1.)

While the allegations made by Batista are, upon a first look, cause for concern, the claims are not substantiated. Most significantly, his claim that he suffers from multiple sclerosis is not supported by the evidence presented. According to the medical records, Batista has presented with symptoms indicative of possible multiple sclerosis, but no final diagnosis has yet been made. The record shows that Batista suffers from mononeuropathy, a numbness and tingling of his left side upper and lower extremities. While the cause of Batista's mononeuropathy has not yet been determined, the Health Services Administrator at FCI Schuylkill explains in his affidavit that Batista received a provisional diagnosis of multiple sclerosis in April 2020 so that he may proceed to undergo additional diagnostic testing. The administrator further states, in his July 1, 2020 affidavit, that Batista's health care team at Schuylkill has been working to

determine the cause of his condition and that Batista has in fact been scheduled for a neurology consult within the next few weeks. Defendant himself has submitted a July 21, 2020 letter from an emergency medicine physician who has reviewed the medical records, and this doctor also acknowledges that Batista "has not yet had the Neurology consult and follow-up test for a final diagnosis [of multiple sclerosis]." (ECF 37, Ex. C at 1.) Moreover, putting aside the matter of diagnosis, there has been no demonstration that Batista's mononeuropathy, or other potential neurological condition, substantially diminishes his ability to care for himself within the environment of a correctional institution. This, too, belies Defendant's assertions that extraordinary and compelling reasons warrant the Court to reduce his sentence.

The claims that Batista is obese, asthmatic and pre-diabetic are similarly unavailing. While these health conditions are ordinarily not severe enough to constitute a compelling reason to warrant a reduction of sentence, the Court is aware that the Covid pandemic presents a new and significant factor which may alter a court's compassionate release assessment, particularly if conditions in the defendant's custodial setting present a heightened risk of illness. In this regard, the Court takes guidance from the Centers for Disease Control and Prevention ("CDC"), which has identified various medical conditions that elevate an individual's risk of becoming gravely ill from Covid. In relevant part, these conditions include "obesity resulting from a body mass index of 30 or higher," "moderate to severe asthma," and "type 2 diabetes mellitus." CDC.gov, Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions (listing underlying medical conditions that put people at increased risk for severe illness from Covid).[2] Batista, however, suffers from none of these conditions. The record shows that, based on his

---

[2] Available at www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (accessed Aug. 4, 2020).

height and weight, Batista has body mass index below the level categorized by the CDC as high-risk obesity. Further, the record shows that he has mild asthma controlled by the use of an as-needed albuterol inhaler. And, Batista presents no evidence that these various ailments interfere with his ability to manage his day-to-day activities or perform self-care in FCI Schuylkill. In short, Defendant fails to demonstrate that he suffers from a substantiated medical condition warranting his early release from prison in light of the Covid pandemic.

The Court must also address the conditions in Batista's place of incarceration. While the motion characterizes the environment as extremely high-risk for coronavirus transmission, the fact is that FCI Schuylkill has reported a single positive case within the facility. According to the affidavit of FCI Schuylkill's Health Services Administrator, the individual who tested positive had voluntarily surrendered to the facility, reported he had the illness, and was promptly quarantined. Moreover, the Government has detailed in its submissions to the Court the measures devised by the BOP and implemented at FCI Schuylkill to reduce exposure to Covid-19 within the facility. There is no indication that Batista's current custodial setting places him at an elevated risk of contracting Covid. The mere possibility of infection with the Covid-19 virus does not, without more, constitute an extraordinary circumstance. See Raia, 954 F.3d at 597 (acknowledging the threat of the disease to high-risk inmates in federal custody but expressing the view that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . ..").

In addition to the foregoing analysis of whether Defendant has demonstrated a compelling reason for reducing his sentence, the Court must consider the applicable factors listed in 18 U.S.C. § 3553(a). Those factors include, among other things, "the history and

characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense [and] . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B). The Court finds that they, too, weigh against granting Batista the relief he seeks. The 60-month sentence imposed by the Court represents the statutory minimum for Batista's conviction for drug trafficking. It takes into consideration the seriousness of Batista's offense and the need for deterrence. Batista's previous convictions for narcotics-related offenses reflect his knowledge and understanding that his actions with regard to the subject crime were wrong and illegal. Moreover, Batista's repeated criminal conduct underscores the need for a sentence which serves as a deterrent. Indeed, the drug trafficking on which the subject sentence is based was committed by Batista while he was on supervised release on another conviction. Additionally, Batista has not yet served half of his 60-month sentence. He has approximately 32 months left to serve, a fact which also militates against granting his motion for compassionate release. United States v. Pawlowski, --- F.3d ---, 2020 WL 4281503, at *2 (3d Cir. 2020) (holding that a district court may consider the time remaining on a defendant's sentence in evaluating whether to grant a motion for compassionate release). In the Court's view, this factor is particularly weighted against a reduction in sentence for Batista in light of the fact that the sentence he was given falls well below the guidelines range of 188 to 235 months.

Finally, the Court will not consider the portion of Defendant's motion requesting that he be allowed to serve the remainder of his sentence in home confinement under the custody of the BOP pursuant to 18 U.S.C. § 3624(c)(2), as amended by Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). An application for home

8

confinement is distinct from a motion to reduce the term of imprisonment under Section 3582(c), which does not authorize the Court to dictate the place of confinement. The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP. See United States v. Moore, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020); see also 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ..''). This Court simply has no jurisdiction to issue any orders predicated upon 18 U.S.C.§ 3624(c)(2) or its amendments under the CARES act. See United States v. Viteri, Crim No. 19-44 (FLW), slip op. at 4 (D.N.J. April 10, 2020); United States v. McGimsey, 2019 WL 2396574, at *3 (W.D. Ky. June 6, 2019) (holding same).

### IV.  ORDER

For the foregoing reasons, the Court finds no compelling reason to grant Batista a compassionate release under the First Step Act.

Accordingly,

**IT IS** on this 5th day of August 2020,

**ORDERED** that Defendant's motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) [ECF 33] is **DENIED WITHOUT PREJUDICE**.

   s/ Stanley R. Chesler   
STANLEY R. CHESLER
United States District Judge
